UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ANTON M. FERGUSON, | ) | CASE NO.1:15CV2636 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| Vs. | ) | |
| | ) | |
| DIRECTV, LLC ET AL., | ) | OPINION AND ORDER |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, J:**

This matter is before the Court on Defendant DIRECTV LLC's and Multiband Corp.'s Motion to Dismiss for Lack of Standing. (ECF # 24). For the following reasons, the Court denies Defendants' Motion.

According to Plaintiff's Amended Complaint, Plaintiff Anton Ferguson worked as an installer for Defendant Multiband, Corp., a Home Services Provider for DIRECTV. Under a Home Services Providers Agreement, ("HSPA") Multiband contracted with DIRECTV to install and maintain DIRECTV products for customers in specified areas. In turn, Multiband enters into subcontractor agreements with installers. Under the HSPA, DIRECTV requires Multiband to identify any subcontractor contracted by Multiband to install DIRECTV services. DIRECTV further requires Multiband and other HSPA contractors to provide

detailed information and documentation on the HSPA subcontractors.  This detailed information and documentation includes background checks and drug screenings using a vendor selected by DIRECTV.  In addition, Multiband obtained consumer reports on its subcontractors which DIRECTV reviewed.  Under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., ("FCRA"), only a person with a permissible purpose may obtain a consumer report.  The FCRA prohibits procuring a consumer report for employment purposes unless the consumer gives written authorization and a clear and conspicuous disclosure in writing has been made to the consumer before the consumer report is obtained.  According to Plaintiff, DIRECTV procured consumer reports of HSP subcontractors without first obtaining written authorization, without a permissible purpose and without making the required disclosures.

Plaintiff's Amended Complaint alleges DIRECTV is a joint employer of Plaintiff along with Multiband and DIRECTV has sole authority to  terminate any subcontractor hired by an HSP.  DIRECTV was required by the FCRA to provide the consumer a copy of the report and provide the consumer with a written description of the consumer's rights before taking any adverse action.  DIRECTV caused Plaintiff to be terminated from his employment with Multiband due to its review of Plaintiff's consumer report without informing him of his rights or providing him a copy of his report.

For these alleged violations of Plaintiff's and the putative class's rights under FCRA, Plaintiff asserts two causes of action against Defendants on behalf of himself and the putative class.  Count One asserts a claim for Obtaining Credit Reports in Violation of the FCRA.  Count Two asserts a cause of action for Taking an Adverse Action in Violation of the FCRA.  Plaintiff seeks statutory and punitive damages as well as costs and attorneys' fees on behalf of

himself and the putative class.

According to Defendants, Plaintiff cannot show an actual injury arising from Defendants' alleged violations of the FCRA. Without an injury-in-fact, causally related to the Defendants' misconduct, Plaintiff lacks standing to assert his claims and the Court lacks subject matter jurisdiction over the claims. Defendants move to Dismiss Plaintiff's claims for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) and 12(h)(3).

## LAW AND ANALYSIS

### Standard of Review

Fed. R. Civ. P. 12(b)(1) states in pertinent part:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter . . . .

When challenged on a motion to dismiss, it is plaintiff's burden to prove the existence of subject matter jurisdiction. *Rogers v. Stratton Indus.,* 798 F.2d 913, 915 (6th Cir.1986). Such challenges are brought by two different methods: (1) facial attacks and (2) factual attacks. *See, e.g., United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir.1994).

"A *facial* attack is a challenge to the sufficiency of the pleading itself. On such a motion, the court must take the material allegations of the petition as true and construed in the light most favorable to the nonmoving party." *Walters v. Leavitt*, 376 F.Supp.2d 746, 752 (E.D. Mich 2005), citing *Scheuer v. Rhodes,* 416 U.S. 232, 235-37 (1974). "A *factual* attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction. On such a motion, no

presumptive truthfulness applies to the factual allegations, . . . and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Walters* at 752. Defendants' Motion presents an attack on the sufficiency of the allegations and is therefore, a facial attack.

### **Article III Standing**

The Constitution limits federal court jurisdiction to actual "cases" or "controversies." U.S. Const., art. III, § 2, cl. 1. Standing to sue is one aspect of the case-or-controversy requirement. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 64 (1997), citing *Northeastern Fla. Chapter, Associated Gen. Contractors of America v. Jacksonville*, 508 U.S. 656, 663-664 (1993). To have standing, a plaintiff must offer evidence that shows: (1) the plaintiff has suffered an injury in fact, which is further defined as a violation of "a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical;" (2) a causal connection between the injury and the defendant's conduct; and (3) a favorable decision will likely redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

In 2016, the United States Supreme Court in *Spokeo, Inc. v. Robins,* 136 S.Ct. 1540 (2016), considered whether a claimant under the FCRA could satisfy the injury-in-fact demands of Article III of the United States Constitution and thus, demonstrate standing by alleging only a bare procedural violation of the FCRA. Spokeo, Inc., a consumer reporting agency, operated a "people search engine" which gathered information on individuals from a variety of databases and provided the results to interested parties, including prospective employers. Respondent Robins discovered his Spokeo-generated report contained

4

inaccuracies and brought an action on behalf of himself and a putative class for FCRA violations. On a motion to dismiss, the district court dismissed Robins' claim for failure to allege an injury-in fact. On appeal, the Ninth Circuit reversed, holding that Robins had asserted that Spokeo violated his statutory rights and that Robins had a personal interest in the handling of his credit information that was individualized. Therefore, according to the Ninth Circuit, he had demonstrated Article III standing.

The Supreme Court remanded the case back to the Ninth Circuit for further analysis because the Ninth Circuit had only determined that Robins' injury was individualized. Under well established Supreme Court precedent, to demonstrate Article III standing, a plaintiff must show an invasion of a legally protected interest that is both concrete and particularized and is actual and imminent, not conjectural or hypothetical. *Lujan,* at 560. Because the Ninth Circuit failed to consider whether Robins had asserted a concrete injury, the Supreme Court remanded, finding the Ninth Circuit's Article III analysis was incomplete. While taking no position on the Ninth Circuit's ultimate conclusion that Robins had Article III standing, the Supreme Court cautioned that while "Congress plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk," Robins could not "satisfy the demands of Article III by alleging a bare procedural violation." *Spokeo*, at 1544.

While the effect of the *Spokeo* decision is playing out across the country as courts wrestle with cases like this where federal statutes establish damages for violations, the facts of this case do not appear to present a true *Spokeo* issue. This Plaintiff has, in fact, alleged a concrete and particularized injury resulting from the alleged statutory violations. Plaintiff alleges two cause of action for violations of the FCRA. First, he alleges a procurement

5

violation by Defendants wherein they procured a consumer report without his consent resulting in his termination.  15 U.S.C. § 1681b permits the furnishing of a consumer report for employment purposes under the following conditions:

(1) Certification from user

A consumer reporting agency may furnish a consumer report for employment purposes only if-(A) the person who obtains such report from the agency certifies to the agency that–

> (i) the person has complied with paragraph (2) with respect to the consumer report, and the person will comply with paragraph (3) with respect to the consumer report if paragraph (3) becomes applicable; and

> (ii) information from the consumer report will not be used in violation of any applicable Federal or State equal employment opportunity law or regulation; and

(B) the consumer reporting agency provides with the report, or has previously provided, a summary of the consumer's rights under this subchapter...

However, 15 U.S.C. §1681b prohibits procuring a consumer report unless:

(i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and

(ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

Under his procurement claim, Plaintiff alleges he never authorized Defendants to obtain his consumer report, yet obtain it they did and terminated his employment based on what they learned in the consumer report.   As Plaintiff alleges in his Amended Complaint, "In or around October 2015, DIRECTV took adverse action toward Plaintiff, based in whole or in part on a consumer report that had been obtained or used for employment purposes by

6

causing Multiband to terminate Plaintiff's employment as a technician." (Amended Complaint at 60).

Plaintiff's Amended Complaint clearly alleges an actual injury resulting from the allegedly unlawful procurement of his consumer report. "An injury in fact for purposes of Article III standing is defined as "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Cox v. Blue Cross Blue Shield of Michigan,* No. 14CV13556, 2016 WL 6395587, at *4 (E.D. Mich. Oct. 28, 2016) quoting *Spokeo*, 136 S.Ct. at 1548. "The particularization component is necessary to establish an injury in fact and requires that the plaintiff be affected "in a personal and individual way. The injury must also be concrete, i.e. "de facto," meaning that it actually exists." *Cox* at *4 quoting *Spokeo* at 1548.

Plaintiff's loss of employment is without question a concrete and particularized injury. It resulted in a loss to plaintiff individually and was not merely hypothetical. Plaintiff alleges it was the result of Defendants' violation of Plaintiff's legally protected interest in prohibiting disclosure of his personal information in his consumer report to his employer without first obtaining Plaintiff's permission. Thus, Plaintiff has alleged a violation of a legally protected right. The Court strongly disagrees with Defendants' characterization that this violation is a bare procedural violation. Defendants are alleged to have unlawfully obtained Plaintiff's Congressionally-protected consumer information. This violated Plaintiff's substantive right of privacy in the disclosure of his consumer information that far exceeds a mere failure to comply with a procedural requirement under the Act. In *Thomas v. FTS USA, LLC,* 193 F. Supp. 3d 623, 632 (E.D. Va. 2016), the Court examined the particular

consumer interests the FCRA was intended to protect. In examining both the House and Senate Reports on the FCRA the Court concluded, "... Congress sought 'to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information,' and 'to prevent an undue invasion of the individual's right of privacy in the collection and dissemination of credit information.'" quoting Senate Report at 1. Thus, when Defendants allegedly unlawfully obtained and reviewed Plaintiff's consumer report without his consent, they engaged in something more than a mere procedural or technical violation of the FCRA; they impermissibly infringed Plaintiff's privacy interest in his consumer report information. By taking an adverse action allegedly based on the information in the consumer report without first obtaining Plaintiff's permission Defendants caused a concrete and particularized injury to Plaintiff.

This leads us to Defendants' primary argument that Plaintiff's failure to assert actual damages fails to establish standing since *Spokeo* mandates dismissal because Plaintiff cannot establish standing. By seeking only statutory damages, Defendants argue, Plaintiff has not asserted an actual injury. Yet as analyzed above, the Court has already determined that at the pleading stage Plaintiff has alleged a violation of the FCRA resulting in an actual injury-in-fact. Having suffered a concrete and particularized injury, the FCRA gives Plaintiff the option to pursue either actual or statutory damages. 15 U.S.C. §1681n reads in pertinent part:

> Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of-(1)(A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or
>
> (B) in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual

8

>damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;
>
>>(2) such amount of punitive damages as the court may allow; and
>
>>(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

Thus, the statute permits the consumer to select either actual or statutory damages. There is no caselaw that the Court is aware of finding that by selecting to pursue only statutory damages, a Plaintiff concedes he or she lacks an actual injury. Here, Plaintiff has alleged a concrete particularized injury - loss of employment. Because he has chosen to pursue statutory instead of actual damages does not deprive Plaintiff of standing. Therefore, the Court denies Defendants' Motion on Plaintiff's procurement claim.

The Court also denies Defendants' Motion on Plaintiff's impermissible use claim. According to Plaintiff, Defendants improperly terminated his employment based on his consumer report without complying with the FCRA requirements that they first provide him a copy of the report and inform him of his rights under the FCRA before taking any adverse action. Again, the Congressional Reports clearly indicate the intent of Congress to protect consumers from adverse actions, including employment actions, based on information in a consumer report.

>"Congress also specifically recognized that '[o]ne problem which the hearings [concerning the bill that later became the FCRA]...identified is the inability at times of the consumer to know he is being damaged by an adverse credit report.' Senate Report at 3. 'Unless a person knows he is being rejected for credit or insurance or employment because of a credit report, he has no opportunity to be confronted with the charges against him and tell his side of the story." *Id.* Congress emphasized that 'the consumer has a right to know when he is being turned down for credit, insurance, or employment because of

adverse information in a credit report and to correct any erroneous information in his credit file.' *Id.* at 2. Therefore, Congress wished to 'establish[ ] the right of a consumer to be informed of investigations into his personal life' and to 'be told the name of the agency making the report' whenever the individual 'is rejected for credit, insurance or employment because of an adverse credit report[.] '" *Id.* at 1. *Thomas*, 193 F. Supp. 3d at 632–33.

This FCRA-created right to the information concerns much more than a mere procedural or technical violation of the FCRA that *Spokeo* cautioned against. It goes to the heart and substance of the FCRA's intent to protect consumers against adverse actions based on the information contained in the report without an opportunity to know its damaging effect on the consumer's credit or employment prospects and a chance to challenge or correct it. In light of the above, the Court finds Plaintiff has asserted a concrete, particularized injury (loss of employment) arising directly from Defendants' alleged violations of the FCRA.

Because Plaintiff's injuries are redressable because the FCRA permits recovery of actual or statutory damages by one who has suffered an injury resulting from its violation, Plaintiff has demonstrated standing to assert his claims and the Court denies Defendants' Motion.

IT IS SO ORDERED.

/s/Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge